IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUANG-KUI DONG,<br><br>    Plaintiff,<br>  v.<br><br>APPLIED FUSION INC., JEFF MUSGROVE, PATRICK DAVIS, MOHAMMED ANSARI, GEORGE SILVA, GREGORY GEDDIS, CITY OF SAN LEANDRO, OFFICER RICK LOPEZ and DOES 1 through 5, inclusive,<br><br>    Defendants.<br>_____/ | No. C 03-03698 SI<br><br>**ORDER RE: SUMMARY JUDGMENT MOTIONS AND MOTION FOR SANCTIONS** |

On June 10, 2005, the Court heard argument on cross-motions for summary judgment and on a motion for sanctions by defendants City of San Leandro and Officer Lopez. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS summary judgment in favor of defendants Applied Fusion, Inc. and Jeff Musgrove; GRANTS IN PART and DENIES IN PART summary judgment in favor of Mohammed Ansari and Gregory Geddis; GRANTS summary judgment in favor of the City of San Leandro and Officer Lopez; DENIES plaintiff's motion for partial summary judgment; and DENIES the motion for sanctions.

**BACKGROUND**

Plaintiff Guang-Kui Dong was born in Signapore and raised in China. He immigrated to the United States in 1986, and has been employed as a machinist since then. He was hired by defendant Applied Fusion, Inc. in April, 2000. On October 4, 2002, plaintiff spoke with his manager, George Silva, about Frank Levering. Apparently, plaintiff believed that Levering, a co-worker, was having trouble operating the machinery

despite the fact that he had been employed at Applied Fusion for seven years. Based on this belief, plaintiff said: "I [Dong] told George that in seven years [Levering] still needed someone to teach him. If I had seven years and I still needed someone to teach me I would rather die." Boltuch Decl., Ex. D at 174-175.

On October 7, 2002, Mohammed Ansari and Gregory Geddis, two of plaintiff's co-workers, informed Silva that plaintiff had told them both separately that he was going to shoot other employees at Applied Fusion, and then himself. Ansari and Geddis reported this information to Silva that same day. In response, Silva notified Jeff Musgrove, the President of Applied Fusion, that plaintiff made threats to Ansari and Geddis and that plaintiff made a suicide reference to Silva on October 4.

After receiving this information, Musgrove spoke with Ansari, Geddis and plaintiff. After speaking with the three employees, Musgrove contacted the San Leandro Police Department to report plaintiff's alleged threats. Officer Rick Lopez of the San Leandro Police Department responded to the call. After arriving at Applied Fusion, Officer Lopez spoke with Musgrove, Ansari and Geddis. Ansari and Geddis again told Officer Lopez that plaintiff threatened to shoot others and himself. Officer Lopez then spoke with plaintiff, who denied making threats to Geddis and Ansari.

Officer Lopez determined that plaintiff should be detained and evaluated by medical personnel pursuant to California Welfare and Institutions Code § 5150. In order to detain plaintiff, Officer Lopez requested an ambulance and completed an Application for Emergency Psychiatric Detention Form. See Lopez Decl., Ex, A. Officer Lopez explained in the form that "due to the subject's open hostilities and threats to kill employees and himself, although the subject denies making the threats it is safer for all parties to have subject evaluated." Id.

Plaintiff was taken to Alameda County Medical Center, where he was evaluated. The next day, he was transferred to Fremont Psychiatric Hospital, where he remained until October 10, 2002. On October 10, 2002, Applied Fusion terminated plaintiff from his employment. The termination was effective October 7, 2002, according to the notice of termination. Parker Decl., Ex. D. The stated reason for termination was "unlawful behavior."

As a result of his termination and detention, plaintiff filed a complaint in this Court against Applied Fusion, Inc., various employees of Applied Fusion, the City of San Leandro and Officer Lopez asserting

2

1 numerous causes of action, including: 1) racial discrimination; 2) breach of contract of continued employment;
2 3) termination in violation of public policy; 4) retaliation in violation of Title VII; 5) violation of the Lanterman-
3 Petris-Short Act; 6) various state tort claims; 7) illegal seizure and arrest in violation of 42 U.S.C. § 1983; and
4 8) municipal liability under 42 U.S.C. § 1983.

Previously, the Court granted the parties' stipulation to dismiss the First and Second Causes of Action for racial discrimination and breach of contract of continued employment. [Docket # 51] The Court also dismissed defendants Patrick Davis and George Silva based on the parties' stipulation. [Docket # 52] Now before the Court are motions for summary judgment brought by 1) plaintiff; 2) the City of San Leandro and Officer Lopez; and 3) Applied Fusion, Inc. and the employee defendants. The City of San Leandro has also brought a motion for sanctions under Federal Rule of Civil Procedure 11 and California Code of Civil Procedure § 1038.[1]

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. See id. at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."

---

[1] The parties bring various evidentiary objections. The Court will address these objections to the extent it relies on evidence under objection in its Order. Plaintiff objects to the attachments to the Addams Declaration because the deposition transcripts do not contain a certification page. Defendants provided the certification pages in the Supplemental Addams Declaration; therefore, the Court OVERRULES plaintiff's objection.

3

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." Id.

## DISCUSSION

**I.   Plaintiff's concessions**

In plaintiff's various pleadings for the current motions for summary judgment, plaintiff concedes that dismissal is proper for several causes of action asserted against defendants. Plaintiff states that it "never intended to allege any state claims against defendant City of San Leandro or defendant Officer Ricky Lopez." Pl.'s Opp'n to City's Mot. at 1. Plaintiff states that the Seventh Cause of Action, which asserts a claim against all defendants, is "an obvious typographical error." Based on plaintiff's representation, the Court GRANTS summary judgment in favor of defendants City of San Leandro and Officer Lopez for plaintiff's seventh cause of action.

Plaintiff also states in its opposition to Applied Fusion's motion for summary judgment that he wants to dismiss his negligence and intentional infliction of emotional distress claims against Applied Fusion. Therefore, the Court GRANTS Applied Fusion's motion for summary judgment with respect to the Seventh and Twelfth Causes of Action.

**II.   Applied Fusion, Inc., Jeff Musgrove, Mohammed Ansari and Gregory Geddis**

Defendants Jeff Musgrove, Mohammed Ansari, and Gregory Geddis (the "employee defendants") and Applied Fusion, Inc. assert that they are entitled to summary judgment for all claims asserted against them by plaintiff. Plaintiff, in his opposition, addresses some of the causes of action discussed by defendants. The

4

1  Court will address each in turn.

2

3  **A.  Termination in violation of public policy**

4  Plaintiff's Third Cause of Action asserts that his termination was in violation of public policy because
5  it was based on a fabricated story that plaintiff had threatened to kill other employees and himself. Plaintiff
6  asserts that this course of action violates Welfare and Institutions Code § 5150 and is therefore a violation of
7  public policy.  Second Amended Complaint at ¶ 35.  Plaintiff asserts this cause of action against Applied
8  Fusion.

9  In a claim of wrongful discharge in violation of public policy, the "basis of the discharge [must]
10 contravene a fundamental public policy," Rojo v. Kliger, 52 Cal. 3d 65, 91 (1990), that "inures to the public
11 at large rather than to a particular employer or employee." Foley v. Interactive Data Corp., 47 Cal. 3d 654,
12 669-70 (1988).  The public policy at issue must also be clearly delineated in a constitutional or statutory
13 provision. Gantt v. Sentry Ins., 1 Cal. 4th 1083, 1095 (1992) (overruled on other grounds by Green v. Ralee
14 Engineering Co., 19 Cal. 4th 66, 71 (1998)).  There are four categories of employee conduct that are
15 protected under a claim for wrongful discharge in violation of public policy: "1) refusing to violate a statute; 2)
16 performing a statutory obligation; 3) exercising a statutory right or privilege; and 4) reporting an alleged violation
17 of a statute of public importance." Id. at 1090-91.

18 Defendant contends that it is entitled to judgment as a matter of law on this claim because plaintiff has
19 admitted that it did not fabricate the story of plaintiff's threats against employers.  In plaintiff's response to
20 Geddis' first set of interrogatories, plaintiff stated that he "is not contending that Applied Fusion, Inc. fabricated
21 any story.  Plaintiff believes that employees of Applied Fusion were not truthful when they spoke to police."
22 Boltuch Decl., Ex. N at 8.  Because plaintiff's allegation that Applied Fusion fabricated the story of October
23 7 in order to terminate plaintiff is the basis for his claim of termination in violation of public policy, defendant
24 asserts that judgment is proper.

25 Plaintiff, in a futile attempt to avoid summary judgment in favor of defendant, presents new arguments
26 in his opposition that diverge greatly from the claims in his complaint.  Specifically, plaintiff now argues that "he
27 was discharged because his employer perceived him as suffering from a mental illness for which it forced him
28

5

to undergo treatment." Pl.'s Opp'n to Applied Fusion's Mot. at 20. Plaintiff also claims that "a jury could easily draw an inference" that defendant believed that "plaintiff suffered an on the job psychological injury which required him to undergo medical treatment," leading to his termination in order "to avoid paying the claim and to avoid the Worker's Compensation Action." Id. Tellingly, plaintiff presents no evidence in support of these new allegations.

Plaintiff's new allegations directly conflict with the allegations in the complaint. The complaint specifically alleges that defendant fabricated the story of plaintiff's threats; however, the new claims state that defendant believed he had a mental illness and discriminated against him as a result. Plaintiff cannot reverse course at this stage in the litigation through an unsupported allegation in an opposition. Additionally, plaintiff has failed to "set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e).

The Court finds that defendant has presented evidence that plaintiff no longer alleges the factual basis for his Third Cause of Action. Plaintiff's new allegations lack evidentiary support and directly conflict with his Complaint. Therefore, the Court GRANTS defendant's motion for summary judgment with respect to the Third Cause of Action.

### B.     Retaliation

Plaintiff's Fourth Cause of Action asserts that he was terminated by Applied Fusion in retaliation for his complaints of racial discrimination, which is a violation of Title VII and FEHA. To establish a prima facie case of retaliation under Title VII, plaintiff must show that (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) the employer's action is causally linked to the protected activity. EEOC v. Dinuba Medical Clinic, 222 F.3d 580, 586 (9th Cir. 2000). Once a plaintiff has made out a prima facie case, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse employment action. Once the defendant articulates such a reason, the plaintiff must then offer evidence to show that the defendant's proffered reason is a pretext for discrimination or retaliation for protected activity. See McDonnell Douglas Corp., 411 U.S. at 802-804; Wallis, 26 F.3d at 891.

The parties do not dispute that Dong's employer subjected him to an adverse employment action.

However, defendant argues that Dong did not engage in a protective activity and that, even if he did, his termination was not causally linked to any protected activity. Plaintiff only references one event that could be considered a protective activity. On October 4, 2002, plaintiff spoke with Silva about Frank Levering, another Applied Fusion employee. Plaintiff says that he told Silva that Levering "had been discriminating against me" and "teasing and harassing me." Dong Decl. at ¶ 7. Additionally, plaintiff "told Mr. Silva that Frank appeared to dislike me because I am Chinese and he does not like yellow people." Id. However, these allegations arose from actions months before, as plaintiff had not spoken with Levering for at least three months. Boltuch Decl., Ex. D at 147-148. After plaintiff made these allegations, Silva offered to talk to plaintiff and Levering to resolve any problems. Silva also said that plaintiff should "let [him] know when something happened" and he would "put an end to it." Boltuch Decl., Ex. E at 14-15. Silva spoke with Levering on October 7 and "told Frank not to do anything that would cause any more issues." Id. at 18.

Assuming that plaintiff's complaint on October 4 constitutes a protective activity, plaintiff has failed to demonstrate that his termination was causally related to the protected activity. In fact, plaintiff fails to provide any evidence or argument in support of this requirement for a prima facie retaliation claim, aside from boilerplate legal standards. Instead of ignoring plaintiff's complaint, Silva acted to rectify any problems caused by Levering against plaintiff. Additionally, plaintiff does not present any evidence that either Silva or Levering was involved in the decision to terminate plaintiff.

The decision to terminate was made by Ron and Jeff Musgrove. Ron Musgrove Decl. at ¶ 15. Jeff Musgrove Decl. at ¶ 14. They made the decision to terminate plaintiff based on his comments that he was considering killing himself and others on October 4 and October 7. Id. When making the decision, they were not aware that Dong had made any complaints regarding racial discrimination. Ron Musgrove Decl. at ¶ 13. Plaintiff presents no evidence that either Ron or Jeff Musgrove was aware of plaintiff's alleged discrimination complaint. Therefore, based on the evidence presented to the Court, plaintiff has failed to meet his burden by proving that plaintiff's termination was causally related to plaintiff's complaints of racial discrimination. All of the evidence supports defendant's assertion that plaintiff was terminated because of the alleged threats made by plaintiff on October 7 and plaintiff's reference to suicide on October 4.

Therefore, the Court finds that plaintiff has failed to present evidence in support of a prima facie case

of retaliation under Title VII and GRANTS defendant's motion for summary judgment with respect to the Fourth Cause of Action.

### C. Lanterman-Petris-Short Act

Plaintiff's Fifth Cause of Action asserts a violation of the Lanterman-Petris-Short Act against Applied Fusion, Inc., Jeff Musgrove, Geddis and Ansari because they intentionally made false statements that plaintiff made threats on October 7, 2002. Under Welfare and Institutions Code § 5150, police officers and other designated professionals can detain a person "who is a danger to others, or to himself" as a "result of mental disorder." The statute authorizes a 72-hour hold of such a person at a county-designated facility for treatment and evaluation. The statute also subjects an individual, other than the officials described above, to civil liability for "intentionally giving a statement which he or she knows to be false," if probable cause for the detention is based on that statement.

Plaintiff has already acknowledged that defendant Applied Fusion did not fabricate the allegations that plaintiff threatened two employees on October 7. See Boltuch Decl., Ex. N at 8. Thus, plaintiff has not presented any evidence that Applied Fusion intentionally gave a false story and the Court GRANTS summary judgment on this claim for Applied Fusion. The Court also GRANTS summary judgment in favor of Jeff Musgrove. The record is undisputed that Musgrove was told by Silva that Geddis and Ansari reported that plaintiff made threats on October 7. Musgrove merely relayed this information to Officer Lopez. Plaintiff presents no evidence that Musgrove knew the information was false. Therefore, summary judgment in favor of Musgrove is proper.

Ansari and Geddis present a more difficult question. Plaintiff has presented evidence that he did not make any threats to Ansari and Geddis on October 7. See Dong Decl. at ¶ 9-13.[2] Defendants Ansari and Geddis have stated that plaintiff did make threats on that date. See Ansari Declaration and Geddis Declaration. It is undisputed that Ansari and Geddis then told Silva, and later Musgrove and Officer Lopez, that plaintiff had

---

[2] Defendants object to the Dong Declaration in Opposition to Applied Fusion's motion for Summary Judgment on the basis that it does not contain any indication that it was translated for plaintiff. At the Court's request, plaintiff has provided the Declaration of Yan Ge, which asserts that she translated the Declaration for plaintiff. Therefore, the Court OVERRULES this objection.

8

threatened them. Additionally, Officer Lopez's decision to take plaintiff into custody under section 5150 was clearly influenced by the allegations made by Ansari and Geddis. Therefore, the Court finds that a material dispute of fact exists regarding whether Ansari and Geddis intentionally made statements that they knew to be false and that probable cause was based on these statements. Defendants argue that plaintiff has not presented evidence that defendants "intentionally" gave a false statement. However, if the Court accepts plaintiff's assertions as true, a jury could conclude that defendants conjured up the story and intentionally shared it with Silva, Musgrove and Officer Lopez, which led to plaintiff's detention. Therefore, the Court DENIES summary judgment with respect to defendants Ansari and Geddis and GRANTS judgment in favor of Jeff Musgrave and Applied Fusion, for plaintiff's Fifth Cause of Action.[3]

### D.  Common law state claims

Plaintiff also brings a series of common law state claims: 1) invasion of privacy; 2) intentional infliction of emotional distress; 3) false imprisonment; 4) assault and battery; and 5) negligence. Defendants presents a series of arguments in support of their motion for summary judgment. Plaintiff does not address these arguments in his opposition.[4]

#### 1.  Defendants Applied Fusion, Inc. and Jeff Musgrove

These claims are all based upon the premise that the defendants acted unreasonably on October 7, 2002. As discussed above, plaintiff has not presented any evidence that defendants Musgrove and Applied Fusion acted in an improper manner based on the information received by them on that day. Plaintiff has not presented any evidence that defendants Musgrove and Applied Fusion intended to harm plaintiff or intended

---

[3] At oral argument, defense counsel suggested that if only state law claims remain after summary judgment, the Court, in its discretion, should dismiss the federal case in favor of re-filing in state court. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. The Court will not dismiss the pending state law claims at this time because of the late stage of these proceedings, which make beginning the process anew in state court inefficient and costly.

[4] Plaintiff does address defendants' argument that the intentional infliction of emotional distress and assault and battery claims are preempted by workers' compensation, which is another basis for summary judgment in favor of defendants.

9

to manufacture a story in order to have plaintiff detained. In fact, the decision to detain plaintiff was made by Officer Lopez. Finally, plaintiff alleges that defendants were negligent because they failed to conduct an investigation before contacting the police. Plaintiff provides no basis for this assertion, and the Court finds that one does not exist. Therefore, the Court GRANTS summary judgment in favor of defendant Jeff Musgrove with respect to the Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action. The Court GRANTS summary judgment in favor of defendant Applied Fusion, Inc. for plaintiff's Sixth, Eighth, and Ninth Causes of Action.[5]

### 2. Defendants Ansari and Geddis

Plaintiff argues that defendants Ansari and Geddis are liable for invasion of privacy because their actions "force[d] plaintiff to have to undergo the intrusive events of psychotherapy and the ingestion of psychotropic drugs." SAC at ¶ 51. However, any actions taken by the medical staff were the result of their own determinations and plaintiff does not present any evidence that defendants' actions forced plaintiff to ingest medications of any kind. Plaintiff does not present any evidence that plaintiff was forced to ingest medication or that the medication was prescribed based on defendants' allegedly false statements. In fact, plaintiff presents no argument or evidence in support of this cause of action against these defendants. Therefore, the Court GRANTS summary judgment with respect to plaintiff's Sixth Cause of Action.

Plaintiff argues that defendants Ansari and Geddis are liable for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress a plaintiff must show: "1) outrageous conduct by the defendant, 2) intention to cause or reckless disregard of the probability of causing emotional distress, 3) severe emotional suffering and 4) actual and proximate causation of the emotional distress." Agarwal v. Johnson, 25 Cal.3d 932, 946 (1979). Outrageous conduct is that which exceeds "all bounds usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress." Id.

As discussed above, plaintiff provides no discussion about this claim in his opposition. Defendants also

---

[5] The Court has already GRANTED summary judgment in favor of Applied Fusion for the Sixth and Twelfth Cause of Action. See Section I.

10

do not discuss this cause of action with respect to Geddis and Ansari. The Court has found that a dispute of fact exists between plaintiff's version of events and Geddis' and Ansari's testimony. Given this factual dispute, plaintiff could prove a set of facts under which a jury could find in his favor on the claim of intentional infliction of emotional distress. Therefore, the Court DENIES the motion by defendants Ansari and Geddis for summary judgment on plaintiff's Seventh Cause of Action.

Plaintiff alleges that defendants Ansari and Geddis are liable for false imprisonment because their actions led to his detention under section 5150. However, to prove false imprisonment, plaintiff must show that defendants intended to confine plaintiff unlawfully, without privilege, for an appreciable length of time. Hagberg v. California Federal Bank FSB, 32 Cal.4th 350, 372-73 (2004). Plaintiff has not presented any evidence that defendants intended to confine plaintiff through the allegedly false statements. Therefore, plaintiff has failed to "designate specific facts showing that there is a genuine issue for trial," and summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court GRANTS summary judgment with respect to plaintiff's Eighth Cause of Action.

Plaintiff alleges a claim of assault and battery against defendants. Plaintiff does not provide any explanation for this claim. Plaintiff's claim must be that he considers the alleged therapy and forced medication during the detention to constitute an assault and battery. However, for reasons discussed above, the Court finds that there is no factual basis for plaintiff's allegation that defendants were responsible for any medications ingested by plaintiff during his detention. In fact, plaintiff presents no evidence in support of his claim that he ingested psychotropic medication. Therefore, the Court GRANTS summary judgment in favor of defendants for plaintiff's assault and battery claim.

Plaintiff's Twelfth Cause of Action asserts a negligence claim against defendants. However, the allegations do not involve Ansari and Geddis and plaintiff provides no explanation as to how these defendants are involved in this claim; therefore, the Court GRANTS summary judgment on plaintiff's Twelfth Cause of Action.

### III. City of San Leandro and Officer Rick Lopez

Plaintiff asserts claims against the City of San Leandro and San Leandro Police Officer Rick Lopez

11

under 42 U.S.C. § 1983. Specifically, plaintiff asserts that Officer Lopez detained him in violation of his Fourth Amendment rights on October 7, 2002. Plaintiff also alleges that the City of San Leandro failed to train officers in the legal standard for detaining individuals under California Welfare & Institutions Code § 5150.

### A.   Officer Lopez

As discussed above, Section 5150 authorizes police officers to detain a person who "as a result of mental disorder, is a danger to others, or to himself." Officers should apply the probable cause standard in section 5150 detentions, and probable cause is determined based upon an objective standard. See Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir. 1991) (holding that the seizure of a mentally ill person "is analogous to a criminal arrest and must therefore be supported by probable cause"); Whren v. United States, 517 U.S. 806, 813 (1996) (holding that "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

In addition to his argument that probable cause existed for the detention of the plaintiff, defendant Lopez asserts that he is entitled to qualified immunity. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 494-95, 111 S. Ct. 1934 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). Plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. See Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). If plaintiff meets this burden, defendant assumes the burden of establishing that, even if he violated plaintiff's constitutional rights, his actions were reasonable. Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

Plaintiff correctly asserts that there is a clearly established right, as the Ninth Circuit held in 1991 that probable cause is required to detain a mentally ill person. Maag, 960 F.3d at 775-76. Additionally, probable cause is the proper standard for a Section 5150 detention, under California law, and probable cause must be evaluated by analyzing the totality of the circumstances, including the "past conduct, character, and reputation of the detainee." People v. Triplett, 144 Cal.App.3d 283, 288 (1983).

Therefore, the Court must determine whether a reasonable officer in defendant's position could have believed that probable cause existed. Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). Although the parties dispute the validity of Officer Lopez's decision, they do not dispute the facts before him when he decided to detain plaintiff. Officer Lopez responded to a call from Applied Fusion on October 7, 2002. Addams Decl., Ex. F ("Lopez Depo.") at 27-28. He first spoke with Jeff Musgrove, then Ansari and Geddis. Id. at 28-30. Both Ansari and Geddies told Officer Lopez that plaintiff threatened to shoot other employees and himself. Id. at 30, 32. Officer Lopez then spoke with plaintiff, who denied making any threats that day. Id. at 37.

After conducting his investigation, Officer Lopez determined that he had probable cause to believe that plaintiff had a mental disorder and was a danger to himself and others. Parker Decl., Ex. H at 52. As a result, Officer Lopez completed an Application for Emergency Psychiatric Detention and placed plaintiff in an ambulance for transport to a county medical facility. Parker Decl., Ex. B.

Plaintiff argues that defendant is not entitled to qualified immunity because it was unreasonable for defendant to detain plaintiff without conducting a sufficient inquiry to determine whether plaintiff was suffering from a mental illness. According to plaintiff, an officer must have probable cause to believe that a detainee is both mentally ill and a danger to himself or others in order to detain someone under Section 5150. Plaintiff argues that he did not display any outward symptoms of mental illness and that defendant failed to consider plaintiff's past conduct, character and reputation, all which point in favor of not detaining him.

Plaintiff also asserts that "the facts necessary to decide the issue of qualified immunity are in dispute." Pl.'s Opp'n at 21. This is incorrect. Plaintiff does not dispute the facts before Officer Lopez at the time he detained plaintiff; instead, plaintiff disagrees with Officer Lopez's decision and his failure to conduct a more extensive inquiry. This is a dispute over whether Officer Lopez acted reasonably, which is not a factual dispute.

The Court finds that defendant is entitled to qualified immunity because, based on the facts before Officer Lopez at the time, it cannot find that defendant was "plainly incompetent" or knowingly violated the law. While a more thorough investigation could have been beneficial, defendant's decision to detain plaintiff after learning that plaintiff twice threatened to kill his co-workers and then himself was reasonable. Plaintiff presents no case law to the contrary. Additionally, plaintiff has not presented any evidence, aside from his denials, demonstrating that defendant should not have relied on the statements from Ansari and Geddis.

Officer Lopez was reasonable in finding that plaintiff was a danger to himself or others because of a "metal disorder." Courts have recognized that a "mental disorder might be exhibited if a person's thought processes, as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances." Triplett, 144 Cal.App.3d at 287-88. Certainly, making repeated verbal threats to shoot and kill co-workers and oneself constitutes behavior that is "bizarre and inappropriate for the circumstances."

Plaintiff relies on a single case in support of his argument that there exists a material dispute of fact in defendant's qualified immunity defense: Begzad v. City of Hayward, 2005 U.S. Dist. LEXIS 4891 (N.D. Cal.). In Begzad, the plaintiff was taken into custody under Section 5150 after the police responded to a call from a third party. The Court denied defendant's motion for summary judgment on the basis of qualified immunity. However, in that case, the court found that "the disputed facts are numerous." Id. at * 15. Viewing the facts in a light most favorable to the plaintiff led the court to determine that the police officer was not told by a third party that plaintiff threatened to kill himself and his family several times, plaintiff did not tell the police officer that he was going to kill himself, and plaintiff became agitated "because the officers were attacking his religion, calling him names, and shoving him around, not because he was mentally unstable." Id. at * 21. These three disputed facts directly contradicted defendant's evidence that was vital to the defense of qualified immunity, making summary judgment in favor of defendant inappropriate.

The current case does not have a material dispute of fact. Plaintiff only disagrees with the decision made by Officer Lopez, not the facts surrounding the decision. Therefore, the Court finds that this issue is suitable for resolution on summary judgment. Based on the undisputed facts, Officer Lopez is entitled to qualified immunity because his decision to detain plaintiff cannot be considered "plainly incompetent" or a "knowing violation of the law," given the severity and repetition of threats allegedly made by plaintiff. Thus, the

14

Court GRANTS summary judgment in favor of defendant, and DENIES plaintiff's motion for summary judgment.

Plaintiff also brings a motion for summary judgment claiming that his toolbox was searched in violation of the Fourth Amendment. Plaintiff presents no evidence in support of his argument that Officer Lopez searched plaintiff's toolbox only after plaintiff was placed in the ambulance. Pl.'s Mot. at 15. Defendant discusses plaintiff's failure to present any evidence; however, plaintiff inexplicably does not discuss this claim in his reply. Therefore, the Court finds that plaintiff has not presented any evidence that a search of plaintiff's toolbox occurred, or that any search was "remote in time or place from the arrest." Chimel v. California, 395 U.S. 752, 763 (1969). The Court DENIES plaintiff's motion for summary judgment.

### B. City of San Leandro

Plaintiff asserts that the City of San Leandro is liable because it has failed to establish or implement a policy for determining what criteria an officer should use when deciding whether to detain someone under Section 5150. A plaintiff may state a § 1983 claim against a state entity under the framework established in Monell v. Dept. of Social Serv., 436 U.S. 658 (1978). In Monell, the Supreme Court held that four conditions must be satisfied to establish municipal liability for failing to act to preserve constitutional rights: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. Id. at 694; Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992).

A local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of the supervision, monitoring or training amounts to deliberate indifference. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Mackinney v. Nielsen, 69 F.3d 1002, 1010 (9th Cir. 1995). Further, the plaintiff must demonstrate that the alleged deficiency in supervision and training actually caused the requisite indifference. See Harris, 489 U.S. at 391. The appropriate inquiry is thus whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect." Id.

Plaintiff makes a series of sweeping statements alleging that the City of San Leandro failed to establish any policy for determining when someone should be taken into custody under Section 5150. Plaintiff then argues that none of the training courses address Section 5150 and that the Police Department has not produced any general orders or bulletins regarding these detentions. This is contrary to the evidence produced in this case. During field training, officers receive training on when individuals can be detained under the Welfare & Institutions Code. See Addams Decl., Ex. I (including field training manual as Exhibit 4 to Spirou Depo.). Officer Lopez testified that this topic was covered when he completed field training. See Addams Decl., Ex. F at 8-9. Additionally, the Police Department provided a training bulletin for officers in February 4, 2002 regarding the standard for detention of mentally ill individuals. See Id. (including bulletin as Exhibit 3 to Spirou Depo.).[6] Sergeant Spirou also provides testimony that probable cause is the proper standard for determining whether to detain the individual in question. Id. at 59.

Plaintiff provides misleading summaries of the deposition testimony by Officer Lopez and Sergeant Spirou in support of his arguments. However, when the evidence is examined, it is clear that officers are guided by the relevant statutes, their training, and any training bulletins they receive. The Court finds as a matter of law that this cannot be considered "deliberate indifference" on the part of the San Leandro Police Department. Therefore, the Court GRANTS defendants' motion for summary judgment and DENIES plaintiff's motion.

## IV. Motion for sanctions

Defendants City of San Leandro and Officer Lopez move for sanctions under Federal Rule of Civil Procedure 11 and California Code of Civil Procedure § 1038. Rule 11 sanctions may be imposed against an attorney, law firm, or party when a pleading is filed for an improper purpose such as harassment or delay, when the claims, defenses or contentions are unwarranted under the either the existing law or a non-frivolous argument for the extension of the law, or when the allegations or factual contentious are without evidentiary support and unlikely to have evidentiary support after further investigation and discovery. Fed. R. Civ. P. 11

---

[6] Plaintiff argues that this bulletin is irrelevant because it applies to Section 5150.05, not Section 5150. This argument has no merit, because Section 5150.05 provides a change in the probable cause standard for detention applied in Section 5150. Section 5150.5 begins: "When determining if probable cause exists to take a person into custody, or cause a person to be taken into custody, pursuant to Section 5150 . . ."

16

(1999). Rule 11 sanctions are discretionary and the court is not required to impose sanctions.

The Court finds that sanctions under Rule 11 are not appropriate at this time. Although plaintiff was unsuccessful in his federal claims against the City of San Leandro and Officer Lopez, the Court finds that these claims were not frivolous.

Defendants also argue that sanctions are appropriate under California CCP § 1038. Courts have cautioned that sanctions "should be used most sparingly to deter only the most egregious conduct." In re Marriage of Flaherty 31 Cal.3d 637, 651 (1982). See also Knight v. City of Capitola, 4 Cal.App.4th 918, 941 (1992) (applying egregious conduct standard to sanctions under CCP § 1038). Courts also have discretion in awarding sanctions. Knight, 4 Cal.App.4th at 941. Plaintiff's counsel wrongfully brought a claim of intentional infliction of emotional distress against defendants City of San Leandro and Officer Lopez. In fact, counsel never attempted to argue that the claim was valid; instead, he said the claim was an "obvious typographical error." Counsel was informed of this typographical error by defendants in December 2004. See Addams Decl., Ex. H. However, counsel did not withdraw the claim until defendants brought a summary judgment motion. Although the state law claim was invalid, plaintiff did assert valid, albeit unsuccessful, federal claims against defendants. Therefore, the Court finds that plaintiff's counsel should have been more responsive to defendant's proper requests, but refuses to find that his conduct was "egregious" and DENIES defendants' motion for sanctions.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS summary judgment in favor of defendants Applied Fusion, Inc. and Jeff Musgrove; DENIES IN PART summary judgment for Mohammed Ansari and Gregory Geddis with respect to plaintiff's Fifth and Seventh Causes of Action and GRANTS IN PART summary judgment with respect to all other claims; GRANTS summary judgment in favor of the City of San Leandro and Officer Lopez; DENIES plaintiff's motion for partial summary judgment; and DENIES the motion for sanctions. (Docket ##54, 61, 64 and 72)

**IT IS SO ORDERED.**

Dated: June 20, 2005

S/Susan Illston
SUSAN ILLSTON
United States District Judge